IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN, MINORS
BY AND THROUGH THEIR NATURAL
GUARDIANS, AARON EDEN AND VICTORIA EDEN

**PLAINTIFFS**

CAUSE NO. _A2402-17-165_

VERSUS

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT, LLC,
HUNT MH PROPERTY MANAGEMENT, LLC,
UNKNOWN JOHN AND JANE DOES A THROUGH M, AND
OTHER UNKNOWN CORPORATE ENTITIES N THROUGH Z

**DEFENDANTS**

## SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Hunt Southern Group, LLC fka Forest City Southern Group, LLC
      c/o Registered Agent
      Capitol Corporate Services, Inc.
      248 E. Capitol Street, Suite 840
      Jackson, Mississippi 39201
      OR WHEREEVER THEY MAY BE FOUND

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to **Rushing & Guice, P. L. L. C.**, the attorneys for Plaintiffs, whose address is **Post Office Box 1925, Biloxi, Mississippi 39533-1925** and whose street address is **1000 Government Street, Suite E, 2nd Floor, Ocean Springs, Mississippi 39564**. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a Judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the _22nd_ day of _December_, 2017.

_Connie Ladner_ Clerk

BY: _Christi Kemp_ D.C.

(SEAL) CIRCUIT COURT OF HARRISON COUNTY MISSISSIPPI

**EXHIBIT**
**A**

FILED

DEC 2.2 2017

CONNIE LADNER
CIRCUIT CLERK
BY: _____ D.C.

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN, MINORS
BY AND THROUGH THEIR NATURAL
GUARDIANS, AARON EDEN AND VICTORIA EDEN                    PLAINTIFFS

VERSUS                                          CAUSE NO. A2402-17-165

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT, LLC,
HUNT MH PROPERTY MANAGEMENT, LLC,
UNKNOWN JOHN AND JANE DOES A THROUGH M, AND
OTHER UNKNOWN CORPORATE ENTITIES N THROUGH Z          DEFENDANTS

## COMPLAINT

## JURY TRIAL REQUESTED

COME NOW Plaintiffs, Aaron Eden, Victoria Eden, and Elisha Eden and Adrienne
Eden, Minors, by and through their natural guardians, Aaron and Victoria Eden (Plaintiffs), by
and through their attorneys, Rushing & Guice, P.L.L.C., and file this their Complaint against
Hunt Southern Group, LLC fka Forest City Southern Group, LLC, Forest City Residential
Management, LLC, Hunt MH Property Management, LLC, Unknown John and Jane Does A
through M, and Other Unknown Corporate Entities N through Z (Defendants), and for good
cause of action, states unto the Court the following, to-wit:

### PARTIES

1.

Plaintiff, Aaron Eden ("Aaron"), is an adult citizen of Harrison County, Mississippi
residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

2.

Plaintiff, Victoria Eden ("Victoria"), is an adult citizen of Harrison County, Mississippi residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

3.

Plaintiff, Elisha Eden ("Elisha"), is the minor child of Aaron and Victoria, her natural guardians, born September 3, 2008, and is a resident of the State of Mississippi, residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

4.

Plaintiff, Adrienne Eden ("Adrienne"), is the minor child of Aaron and Victoria, her natural guardians, born October 9, 2009, and is a resident of the State of Mississippi, residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

5.

Defendant, Hunt Southern Group, LLC (Hunt Southern), fka Forest City Southern Group, LLC (Forest City Southern), is a Delaware Limited Liability Company registered to do business in Mississippi. On March 18, 2016, Forest City Southern Group, LLC filed Articles/Certificate of Amendment with the Mississippi Secretary of State, changing its name to Hunt Southern Group, LLC. Hunt Southern fka Forest City Southern may be served through it registered agent, Capitol Corporate Services, Inc., at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201. Hunt Southern fka Forest City Southern is believed to be the owner of the property in issue.

6.

Defendant, Forest City Residential Management, LLC (Forest City Residential Management), is an Ohio Limited Liability Company, formally known as Forest City Residential Management, Inc., whose registration in Mississippi was administratively dissolved on

November 30, 2016. Forest City Residential Management may be served with process by serving its registered agent for process, FCE Statutory Agent, Inc., 50 Public Square, Suite 1360, Cleveland, Ohio 44113. Forest City Residential Management is listed as the agent for Forest City Southern Group on the lease for the property in issue.

7.

Defendant, Hunt MH Property Management, LLC (Hunt MH Property Management), is a Delaware Limited Liability Company, registered to do business in Mississippi and may be served through its registered agent, Capitol Corporate Services, Inc., at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201. Based on information and belief, Hunt MH Property Management is the agent of Hunt Southern and has been charged with the maintenance and upkeep of the property in issue.

8.

Other Unknown John and Jane Does A through M are unknown Defendants who may be seasonably supplemented after discovery.

9.

Other Unknown Corporate Entities N through Z are unknown Defendants who may be seasonably supplemented after discovery.

**JURISDICTION AND VENUE**

10.

Jurisdiction is proper in this Court under Miss. Code Ann. § 9-7-81. Venue is proper in Harrison County as this is the location where the injuries were sustained, where the cause of action accrued and where Plaintiffs reside. Jurisdiction is also proper pursuant to Miss. Code Ann. § 13-3-57 since Defendants were doing business within the State, made contracts with

Plaintiffs, who are residents of Mississippi, those contracts were performed wholly within Harrison County, Mississippi, Second Judicial District, and the alleged tort was committed against Plaintiffs in Mississippi. Defendants, therefore, should be subjected to the jurisdiction of Mississippi courts.

## FACTS

### 11.

Aaron is a Technical Sergeant with the United States Air Force. In October of 2014, after being selected for instructor's duty at Keesler Air Force Base, Aaron moved his family to Biloxi, Mississippi. Like other military families moving to the area, the military housing assignment for Plaintiffs was controlled by Defendants.

### 12.

Plaintiffs signed a Military Lease Agreement with Defendants in October of 2014. Plaintiffs were assigned military housing at 218 Freeman Drive in Biloxi, Mississippi in the County of Harrison (Subject Property). Plaintiffs moved into the Subject Property in October of 2014. The Subject Property is located in the West Falcon Neighborhood, which is military housing specifically for Junior Enlisted (E1-E6). West Falcon is comprised of approximately 140 homes and is located near Keesler Air Force Base. At all times mentioned herein, the Subject Property was owned, controlled or managed by Defendants.

### 13.

At the time Plaintiffs entered into the Military Lease Agreement, West Falcon was owned and operated by Defendants. Defendants exercised custody and control over West Falcon and acted as the owners of West Falcon through a fifty year lease initiated by the United States Department of Defense through a program called the Military Housing Privatization Initiative.

Essentially, while Defendants own the improvements on the land and maintain custody and control of the property, the United States maintains an ownership interest in the land.

14.

After moving into West Falcon, Plaintiffs reported several maintenance concerns involving mold and water damage. Despite Defendants' maintenance technicians reporting that the mold and leaks were resolved, it was later learned that the air conditioner ductwork had a sweating problem and that the mold problem was more pervasive. This duct sweating, caused by poorly insulated ductwork, contributed to the mold and water damage throughout the subject property. Further it has been recently shown that Defendants have taken significant steps to replace the ductwork in many of the houses it operates.

15.

Plaintiffs' maintenance records show repeated requests for Defendants to address mold and leaking problems while they lived in West Falcon. The maintenance records show that the mold was simply "cleaned with soap and water" instead of being removed. Fraudulent misrepresentations were made to Plaintiffs by Defendants regarding the removal of the mold. Plaintiffs were told that the mold problem had been rectified when in fact the cause of the water damage was not addressed. Throughout the entire time Plaintiffs resided at West Falcon, Defendants never replaced the air conditioner filters. Plaintiffs replaced the filters on their own.

16.

On one such occasion, or about May 13, 2015, Plaintiffs asked Defendants to address several mold patches in the Subject Property including on the spare bathroom room ceiling and on the wall in the master bedroom. Later that day, a maintenance person arrived to clean the suspected substance (maintenance technicians were instructed not to call the substance mold).

The maintenance technician, Gregory Preston, noted that he had cleaned the "suspected substance" with "soap and water," rather than addressing the root of the moisture. This allowed for the toxic mold to continue flourishing beneath the surface.

17.

On another occasion, or about September 22, 2016, Plaintiffs asked that Defendants inspect mold on the ceiling in the master bathroom and on the downstairs air conditioner vents. Again Defendants cleaned the mold and also checked whether the air conditioner ducts were sweating. The maintenance technician, Quentin Dowdy, found that they were.

18.

The mold growth in the Subject Property continued. In June and July of 2017, Defendants found that both the air conditioner ducts and a roof vent cap were leaking, which contributed to the mold in the master bathroom and the hall bathroom. On July 25, 2017 Defendants again came out and simply sprayed the mold on the master bath ceiling with "soap and water" rather than addressing the root of the moisture problems.

19.

Throughout August of 2017, Plaintiffs experienced air conditioner issues and leaking. None of the maintenance reports show that the leaking, likely caused by sweating air conditioner ducts, was resolved. On or about August 21, 2017, Defendants came out to repair the roof leaks that had contributed to the moisture problem. The maintenance reports also state that they decontaminated and painted the ceilings where mold had grown.

20.

On or about September 13, 2017, Plaintiffs began the process to move out of the Subject Property. In a September 14, 2017 email with Defendants' Community Director, Freddie Jordan

James, Plaintiffs were told that they would be required to put in a thirty day notice before moving out. In their response, Plaintiffs expressed their concern for their health and asked that they be allowed to move out at the end of the month. Despite their concerns and having experienced negative health issues from living in the Subject Property, Defendants refused to allow the early move out and charged Plaintiffs rent for the full thirty days from the notice. To be able to afford the move out of the Subject Property, Plaintiffs were forced to take an advance from the Air Force, which has and will continue to impact their paycheck each month until the advance is paid back.

21.

Plaintiffs have obtained information from other military housing families which leads them to believe that mold issues such as those experienced in their home were commonplace, having occurred in other military housing owned and operated by Defendants including others in West Falcon.

22.

Because Defendants refused to honor their contractual obligation to cover the expense of Plaintiffs' relocation, Plaintiffs incurred great expense in moving themselves. They also suffered property loss due to mold contamination and have not been compensated for any of their losses.

23.

As a direct result of the continued exposure to toxic mold located in the Subject Property, all of which was known to Defendants, Plaintiffs have suffered and continue to suffer physical injuries, medical expenses and property damage.

24.

The Subject Property is a water damaged building, a residential structure which has been subject to excessive water intrusion from both external and internal water leaks and moisture accumulation. The term "water damaged building" is also used in conjunction with a descriptive term now used by the National Academies of Science, the U.S. Centers for Disease Control, and the World Health Organization, i.e., "damp indoor spaces" and "mold related illness," all of which collectively describe a mixture of biologically generated contaminates known to cause adverse human health effects. Damp Indoor Spaces are now recognized by multiple federal and medical authorities as a public-health problem, contributing to tens of thousands of illnesses across the country and billions of dollars in medical costs.

25.

In this case, Plaintiffs had excessive mold growth and moisture inside the Subject Property, typical of a damp indoor space. Stachybotrys, commonly referred to as "black mold" or "toxic mold," and Aspergillus, known to be a powerful respiratory irritant, are common in damp indoor spaces. Both spores are particularly dangerous, as both are well known to grow in excessive numbers in damp indoor spaces and both release mycotoxins and VOCs, and have toxic impacts of their own. The likelihood of these spores in the Subject Property demonstrates the extremely dangerous conditions Plaintiffs were forced to live in.

26.

Defendants, as large, national managers and owners of thousands of apartment and residential units knew full well of the health risks associated with water damaged buildings and mold. Defendants failed to remediate mold in the Subject Property and caused serious injury and property loss to Plaintiffs as a result.

## COUNT I

## NEGLIGENCE

### 27.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 26.

### 28.

Defendants, as owners and/or managers of West Falcon:

A.  Failed to provide a reasonably safe premises in accordance with the Military Lease Agreement, which amounted to a breach of the implied warranty of habitability;

B.  Negligently failed to pay for relocation expenses and caused Plaintiffs to pay for the moving expenses;

C.  Failed to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by Plaintiffs;

D.  Negligently failed to maintain the air conditioning system and ducts in such a way allowing ideal conditions for toxic mold to grow in the Plaintiffs' house, including never replacing the air conditioner filters;

E.  Negligently managed and maintained West Falcon;

F.  Negligently supervised their employees, agents and/or representatives;

G.  Negligently trained and supervised their employees, agents and/or representatives;

H.  Negligently inspected West Falcon for dangerous and harmful conditions;

I.  Negligently remediated the toxic mold contained in the Subject Property;

J.  Knew or should have known that the house contained dangerous levels of toxic mold and did nothing to remedy the toxic mold infestation;

K.     Failed to exercise reasonable care to repair dangerous defective conditions, which included the existence of mass amounts of toxic mold in the Subject Property, upon notice of their existence by Plaintiffs;

L.     Negligently failed to promulgate warnings to their tenants about the existence of toxic mold and/or the possibility of the development of toxic mold; and

M.     Failed to prevent any and all other acts of negligence which may be proven at trial by failing to fulfill its duties to Plaintiffs, thus causing damages which they have suffered.

29.

As a direct and proximate result of the negligence of Defendants, Plaintiffs sustained serious and painful personal injuries, extreme mental and physical pain and suffering, anxiety, anguish and upset, losses and damage to their quality of life, and mental and emotional well-being, property damage, and reasonable and necessary doctor, hospital, medical and related bills and expenses.

## COUNT II

## GROSS NEGLIGENCE

30.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 29.

31.

At all times mentioned herein, Defendants acted with gross negligence in total disregard of the duties owed to Plaintiffs to the degree that said gross negligence constitutes an intentional act.

32.

As a direct and proximate result of the gross negligence of Defendants, Plaintiffs have suffered injuries as described herein.

**COUNT III**

**BREACH OF CONTRACT**

33.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 32.

34.

Defendants breached the Military Lease Agreement entered into with Plaintiffs in October of 2014. The contract was breached for the following reasons:

A.   Defendants violated the Implied Covenant of Good Faith and Fair Dealing when they failed to deal fairly and in good faith causing Plaintiffs to not benefit from the contract;

B.   Defendants violated the Implied Warranty of Habitability, which is implied in all residential leases, when they leased to Plaintiffs a house that was not fit for human habitation;

C.   The negligent management and maintenance of the property led to the moist environment, which is ideal for toxic mold growth;

D.   Defendants failed to successfully complete the annual physical maintenance inspection of the property to ensure the house was up to housing maintenance quality standards by finding and repairing moist conditions that existed in the house;

E.  Defendants' employees or agents physically inspected the Subject Property after the complaints about toxic mold were made to Defendants and nothing was done to properly remedy the toxic mold infestation;

F.  Toxic mold spores were visible in plain sight so that Defendants' employees were able or should have been able to witness toxic mold growing in the houses and still did nothing to remedy the toxic mold infestation; and

G.  Defendants failed to honor the lease provision which allows for relocation of the tenant in the event the housing becomes uninhabitable. Further the lease provides that "Owner shall pay the cost of the relocation." Plaintiffs shouldered the entire cost of the relocation.

35.

As a direct and proximate result of Defendants breaching the contract with Plaintiffs and providing an unreasonably dangerous house, Plaintiffs sustained serious and painful, extreme mental and physical pain and suffering, anxiety, anguish and upset, losses and damage to their quality of life, and mental and emotional well-being, property damage, and reasonable and necessary doctor, hospital, medical and related bills and expenses.

## COUNT IV

## CIVIL CONSPIRACY

36.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 35.

37.

At all times mentioned herein, Defendants operated under an agreement between two or more persons or entities to accomplish the unlawful purpose of concealing dangerous conditions within the Subject Property. Additionally, each Defendant committed overt acts in furtherance of this conspiracy to conceal the dangerous condition causing damage to Plaintiffs.

## COUNT V

## ALTER EGO

38.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 37.

39.

At all times mentioned herein, Defendants, and each of them, inclusive of Unknown John and Jane Does A through M and Unknown Entities N through Z, were authorized and empowered by each other to act, and did so act, as agents of each other, and all of the things herein alleged to have been done by them were done in the capacity of such agency. Defendants disregarded corporate formalities and used the corporate form to commit the aforementioned malfeasance. Upon information and belief, all Defendants are responsible in some manner for the events described herein and liable to Plaintiffs for the damages they have incurred.

## COUNT VI

## FRAUDULENT CONCEALMENT

40.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 39.

41.

Defendants are guilty of fraudulent concealment which, in accordance with Miss. Code §15-1-67, results in Plaintiffs' cause of action accruing when "such fraud shall be, or with reasonable diligence might have been, first known or discovered." The fraudulent actions of Defendants are:

A.      Defendants took affirmative action designed or intended to prevent Plaintiffs from discovering the presence of toxic mold in their home, which affirmative action did in fact work to prevent them from discovering the toxic mold, until such time as action was taken by Plaintiffs to confirm the presence of the toxic mold;

B.      Defendants' maintenance technicians repeatedly reported that the toxic mold and leaks were located, repaired and removed when in fact they were not;

C.      Defendants did not disclose to Plaintiffs that they knew that toxic mold was a problem in the military housing they owned and managed;

D.      Defendants did not disclose to Plaintiffs that they knew that toxic mold had caused serious health problem to residents of military housing they owned and managed; and

E.      Defendants did not disclose to Plaintiffs that they knew the military housing they owned and managed suffered from serious construction defects that caused damp indoor spaces making the growth of toxic mold foreseeable.

## COUNT VII

## INTENTIONAL ENDANGERMENT

42.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 41.

43.

At all times mentioned herein, Defendants' actions were intentional and endangering to Plaintiffs. This included intentionally endangering Plaintiffs by allowing them to live in dangerous housing conditions, intentionally endangering Plaintiffs by allowing the dangerous conditions to persist, intentionally endangering Plaintiffs by failing to remedy the dangerous conditions, and intentionally endangering Plaintiffs by failing to relocate Plaintiffs after the dangerous conditions were discovered.

## DISCOVERY RULE

44.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 43.

45.

To the extent that Defendants allege that any of Plaintiffs' claims against them are barred by any statute of limitations, Plaintiffs plead the discovery rule. Plaintiffs suffered from a latent injury, undiscoverable by reasonable means. Plaintiffs neither knew nor should have known that they had been harmed, much less that their harm was caused by the wrongful conduct of Defendants until such time that was within the limitations period applicable to the claims they have asserted.

## CONTINUING TORT

46.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 45.

47.

To the extent that Defendants allege that any of Plaintiffs' claims against them are barred by any statute of limitations, Plaintiffs plead the continuing tort doctrine. Defendants inflicted

injury upon Plaintiffs over a period of time by engaging in continuous wrongful conduct which was repeated until Plaintiffs moved out of the Subject Property.

## DISABILITY OF INFANCY

48.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 47.

49.

Elisha and Adrienne are minors, tolling the applicable statute of limitations in accordance with the minors savings clause. See Miss. Code Ann. § 15-1-59.

## DAMAGES

50.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 49.

51.

As a direct and proximate result of Defendants' wrongful and negligent conduct, Plaintiffs sustained serious injuries, losses, and damages as follows:

A. Plaintiff, Aaron Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to his quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which he should be compensated for;

B. Plaintiff, Victoria Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to her quality of life, and mental and emotional well-being, reasonable and

necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for;

C. Plaintiff, Elisha Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to his quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for:

D. Plaintiff, Adrienne Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to her quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for; and

## PUNITIVE DAMAGES

### 52.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 51.

### 53.

At all times mentioned herein, Defendants acted with actual malice and/or gross negligence which evidenced a willful, wanton, or reckless disregard for others, or committed actual fraud, and such actions were so oppressive and overbearing that in order to punish the wrongdoer and deter similar misconduct in the future, Defendants should be subject to punitive damages consistent with the statutory scheme in the State of Mississippi. Specifically, after considering Defendants' financial condition and net worth, the nature and reprehensibility of Defendants' wrongdoing, Defendants' awareness of the amount of harm being caused, and

Defendants' motivation in causing such harm, the duration of Defendants' misconduct and attempts to conceal such misconduct, and Miss. Code Ann. § 11-1-65, Defendants should be subject to punitive damages in an amount to be proven at trial and decided by the jury.

## ATTORNEYS' FEES

54.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 53.

55.

Defendants are liable for all reasonable attorneys' fees, costs, and expenses incurred in pursuit of this cause if found liable for punitive damages or fraud.

## PRAYER

WHEREFORE, Plaintiffs pray that after due proceedings are had that a Judgment be rendered in favor of Plaintiffs and against Defendants for damages in an amount to be proven at the trial of this cause, said damages including actual damages, compensatory damages and any other such damages to which Plaintiffs may be entitled and which may be proven at the trial of this cause, for a punitive damages amount based on Defendants' financial condition and net worth, for attorneys' fees, for post-judgment interest, or for such other amount consistent with the statutory scheme in Mississippi for the awarding of such damages, for all costs of this cause and for such other relief to which Plaintiffs may be entitled under the premises.

Respectfully submitted,

AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN,
MINORS, BY AND THROUGH THEIR
NATURAL GUARDIANS,
AARON AND VICTORIA EDEN

BY: _____

WILLIAM LEE GUICE III
MS BAR # 5059
MARIA MARTINEZ
MS BAR # 9951
RUSHING & GUICE, P.L.L.C.
P. O. BOX 1925
BILOXI, MS  39533
TELEPHONE: (228) 374-2313
FAX:  (228) 875-5987
ATTORNEYS FOR PLAINTIFFS

## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
### SECOND JUDICIAL DISTRICT

AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN, MINORS
BY AND THROUGH THEIR NATURAL
GUARDIANS, AARON EDEN AND VICTORIA EDEN                    **PLAINTIFFS**

**VERSUS**                                          CAUSE NO. A2402-2017-165

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT, LLC,
HUNT MH PROPERTY MANAGEMENT, LLC,
UNKNOWN JOHN AND JANE DOES A THROUGH M, AND
OTHER UNKNOWN CORPORATE ENTITIES N THROUGH Z          **DEFENDANTS**

### SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HARRISON

TO:   Hunt MH Property Management, LLC
      c/o Registered Agent
      Capitol Corporate Services, Inc.
      248 E. Capitol Street, Suite 840
      Jackson, Mississippi 39201
      OR WHEREEVER THEY MAY BE FOUND

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to **Rushing & Guice, P. L. L. C.,** the attorneys for Plaintiffs, whose address is **Post Office Box 1925, Biloxi, Mississippi 39533-1925** and whose street address is **1000 Government Street, Suite E, 2nd Floor, Ocean Springs, Mississippi 39564.** Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a Judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, on this the 22nd day of December 2017.

Connie Ladner Clerk

BY: Christi Kinlu D.C.



IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN, MINORS
BY AND THROUGH THEIR NATURAL
GUARDIANS, AARON EDEN AND VICTORIA EDEN

**PLAINTIFFS**

**VERSUS**

CAUSE NO. A2402-17-165

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT, LLC,
HUNT MH PROPERTY MANAGEMENT, LLC,
UNKNOWN JOHN AND JANE DOES A THROUGH M, AND
OTHER UNKNOWN CORPORATE ENTITIES N THROUGH Z

**DEFENDANTS**

## COMPLAINT

## JURY TRIAL REQUESTED

COME NOW Plaintiffs, Aaron Eden, Victoria Eden, and Elisha Eden and Adrienne Eden, Minors, by and through their natural guardians, Aaron and Victoria Eden (Plaintiffs), by and through their attorneys, Rushing & Guice, P.L.L.C., and file this their Complaint against Hunt Southern Group, LLC fka Forest City Southern Group, LLC, Forest City Residential Management, LLC, Hunt MH Property Management, LLC, Unknown John and Jane Does A through M, and Other Unknown Corporate Entities N through Z (Defendants), and for good cause of action, states unto the Court the following, to-wit:

### PARTIES

1.

Plaintiff, Aaron Eden ("Aaron"), is an adult citizen of Harrison County, Mississippi residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

2.

Plaintiff, Victoria Eden ("Victoria"), is an adult citizen of Harrison County, Mississippi residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

3.

Plaintiff, Elisha Eden ("Elisha"), is the minor child of Aaron and Victoria, her natural guardians, born September 3, 2008, and is a resident of the State of Mississippi, residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

4.

Plaintiff, Adrienne Eden ("Adrienne"), is the minor child of Aaron and Victoria, her natural guardians, born October 9, 2009, and is a resident of the State of Mississippi, residing at 7072 Camp Wilkes Road, Biloxi, Mississippi.

5.

Defendant, Hunt Southern Group, LLC (Hunt Southern), fka Forest City Southern Group, LLC (Forest City Southern), is a Delaware Limited Liability Company registered to do business in Mississippi. On March 18, 2016, Forest City Southern Group, LLC filed Articles/Certificate of Amendment with the Mississippi Secretary of State, changing its name to Hunt Southern Group, LLC. Hunt Southern fka Forest City Southern may be served through it registered agent, Capitol Corporate Services, Inc., at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201. Hunt Southern fka Forest City Southern is believed to be the owner of the property in issue.

6.

Defendant, Forest City Residential Management, LLC (Forest City Residential Management), is an Ohio Limited Liability Company, formally known as Forest City Residential Management, Inc., whose registration in Mississippi was administratively dissolved on

November 30, 2016. Forest City Residential Management may be served with process by serving its registered agent for process, FCE Statutory Agent, Inc., 50 Public Square, Suite 1360, Cleveland, Ohio 44113. Forest City Residential Management is listed as the agent for Forest City Southern Group on the lease for the property in issue.

7.

Defendant, Hunt MH Property Management, LLC (Hunt MH Property Management), is a Delaware Limited Liability Company, registered to do business in Mississippi and may be served through its registered agent, Capitol Corporate Services, Inc., at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201. Based on information and belief, Hunt MH Property Management is the agent of Hunt Southern and has been charged with the maintenance and upkeep of the property in issue.

8.

Other Unknown John and Jane Does A through M are unknown Defendants who may be seasonably supplemented after discovery.

9.

Other Unknown Corporate Entities N through Z are unknown Defendants who may be seasonably supplemented after discovery.

## JURISDICTION AND VENUE

10.

Jurisdiction is proper in this Court under Miss. Code Ann. § 9-7-81. Venue is proper in Harrison County as this is the location where the injuries were sustained, where the cause of action accrued and where Plaintiffs reside. Jurisdiction is also proper pursuant to Miss. Code Ann. § 13-3-57 since Defendants were doing business within the State, made contracts with

Plaintiffs, who are residents of Mississippi, those contracts were performed wholly within Harrison County, Mississippi, Second Judicial District, and the alleged tort was committed against Plaintiffs in Mississippi. Defendants, therefore, should be subjected to the jurisdiction of Mississippi courts.

## FACTS

11.

Aaron is a Technical Sergeant with the United States Air Force. In October of 2014, after being selected for instructor's duty at Keesler Air Force Base, Aaron moved his family to Biloxi, Mississippi. Like other military families moving to the area, the military housing assignment for Plaintiffs was controlled by Defendants.

12.

Plaintiffs signed a Military Lease Agreement with Defendants in October of 2014. Plaintiffs were assigned military housing at 218 Freeman Drive in Biloxi, Mississippi in the County of Harrison (Subject Property). Plaintiffs moved into the Subject Property in October of 2014. The Subject Property is located in the West Falcon Neighborhood, which is military housing specifically for Junior Enlisted (E1-E6). West Falcon is comprised of approximately 140 homes and is located near Keesler Air Force Base. At all times mentioned herein, the Subject Property was owned, controlled or managed by Defendants.

13.

At the time Plaintiffs entered into the Military Lease Agreement, West Falcon was owned and operated by Defendants. Defendants exercised custody and control over West Falcon and acted as the owners of West Falcon through a fifty year lease initiated by the United States Department of Defense through a program called the Military Housing Privatization Initiative.

Essentially, while Defendants own the improvements on the land and maintain custody and control of the property, the United States maintains an ownership interest in the land.

14.

After moving into West Falcon, Plaintiffs reported several maintenance concerns involving mold and water damage. Despite Defendants' maintenance technicians reporting that the mold and leaks were resolved, it was later learned that the air conditioner ductwork had a sweating problem and that the mold problem was more pervasive. This duct sweating, caused by poorly insulated ductwork, contributed to the mold and water damage throughout the subject property. Further it has been recently shown that Defendants have taken significant steps to replace the ductwork in many of the houses it operates.

15.

Plaintiffs' maintenance records show repeated requests for Defendants to address mold and leaking problems while they lived in West Falcon. The maintenance records show that the mold was simply "cleaned with soap and water" instead of being removed. Fraudulent misrepresentations were made to Plaintiffs by Defendants regarding the removal of the mold. Plaintiffs were told that the mold problem had been rectified when in fact the cause of the water damage was not addressed. Throughout the entire time Plaintiffs resided at West Falcon, Defendants never replaced the air conditioner filters. Plaintiffs replaced the filters on their own.

16.

On one such occasion, or about May 13, 2015, Plaintiffs asked Defendants to address several mold patches in the Subject Property including on the spare bathroom room ceiling and on the wall in the master bedroom. Later that day, a maintenance person arrived to clean the suspected substance (maintenance technicians were instructed not to call the substance mold).

The maintenance technician, Gregory Preston, noted that he had cleaned the "suspected substance" with "soap and water," rather than addressing the root of the moisture. This allowed for the toxic mold to continue flourishing beneath the surface.

17.

On another occasion, or about September 22, 2016, Plaintiffs asked that Defendants inspect mold on the ceiling in the master bathroom and on the downstairs air conditioner vents. Again Defendants cleaned the mold and also checked whether the air conditioner ducts were sweating. The maintenance technician, Quentin Dowdy, found that they were.

18.

The mold growth in the Subject Property continued. In June and July of 2017, Defendants found that both the air conditioner ducts and a roof vent cap were leaking, which contributed to the mold in the master bathroom and the hall bathroom. On July 25, 2017 Defendants again came out and simply sprayed the mold on the master bath ceiling with "soap and water" rather than addressing the root of the moisture problems.

19.

Throughout August of 2017, Plaintiffs experienced air conditioner issues and leaking. None of the maintenance reports show that the leaking, likely caused by sweating air conditioner ducts, was resolved. On or about August 21, 2017, Defendants came out to repair the roof leaks that had contributed to the moisture problem. The maintenance reports also state that they decontaminated and painted the ceilings where mold had grown.

20.

On or about September 13, 2017, Plaintiffs began the process to move out of the Subject Property. In a September 14, 2017 email with Defendants' Community Director, Freddie Jordan

James, Plaintiffs were told that they would be required to put in a thirty day notice before moving out. In their response, Plaintiffs expressed their concern for their health and asked that they be allowed to move out at the end of the month. Despite their concerns and having experienced negative health issues from living in the Subject Property, Defendants refused to allow the early move out and charged Plaintiffs rent for the full thirty days from the notice. To be able to afford the move out of the Subject Property, Plaintiffs were forced to take an advance from the Air Force, which has and will continue to impact their paycheck each month until the advance is paid back.

21.

Plaintiffs have obtained information from other military housing families which leads them to believe that mold issues such as those experienced in their home were commonplace, having occurred in other military housing owned and operated by Defendants including others in West Falcon.

22.

Because Defendants refused to honor their contractual obligation to cover the expense of Plaintiffs' relocation, Plaintiffs incurred great expense in moving themselves. They also suffered property loss due to mold contamination and have not been compensated for any of their losses.

23.

As a direct result of the continued exposure to toxic mold located in the Subject Property, all of which was known to Defendants, Plaintiffs have suffered and continue to suffer physical injuries, medical expenses and property damage.

24.

The Subject Property is a water damaged building, a residential structure which has been subject to excessive water intrusion from both external and internal water leaks and moisture accumulation. The term "water damaged building" is also used in conjunction with a descriptive term now used by the National Academies of Science, the U.S. Centers for Disease Control, and the World Health Organization, i.e., "damp indoor spaces" and "mold related illness," all of which collectively describe a mixture of biologically generated contaminates known to cause adverse human health effects. Damp Indoor Spaces are now recognized by multiple federal and medical authorities as a public-health problem, contributing to tens of thousands of illnesses across the country and billions of dollars in medical costs.

25.

In this case, Plaintiffs had excessive mold growth and moisture inside the Subject Property, typical of a damp indoor space. Stachybotrys, commonly referred to as "black mold" or "toxic mold," and Aspergillus, known to be a powerful respiratory irritant, are common in damp indoor spaces. Both spores are particularly dangerous, as both are well known to grow in excessive numbers in damp indoor spaces and both release mycotoxins and VOCs, and have toxic impacts of their own. The likelihood of these spores in the Subject Property demonstrates the extremely dangerous conditions Plaintiffs were forced to live in.

26.

Defendants, as large, national managers and owners of thousands of apartment and residential units knew full well of the health risks associated with water damaged buildings and mold. Defendants failed to remediate mold in the Subject Property and caused serious injury and property loss to Plaintiffs as a result.

## COUNT I

## NEGLIGENCE

27.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 26.

28.

Defendants, as owners and/or managers of West Falcon:

A.   Failed to provide a reasonably safe premises in accordance with the Military Lease Agreement, which amounted to a breach of the implied warranty of habitability;

B.   Negligently failed to pay for relocation expenses and caused Plaintiffs to pay for the moving expenses;

C.   Failed to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by Plaintiffs;

D.   Negligently failed to maintain the air conditioning system and ducts in such a way allowing ideal conditions for toxic mold to grow in the Plaintiffs' house, including never replacing the air conditioner filters;

E.   Negligently managed and maintained West Falcon;

F.   Negligently supervised their employees, agents and/or representatives;

G.   Negligently trained and supervised their employees, agents and/or representatives;

H.   Negligently inspected West Falcon for dangerous and harmful conditions;

I.   Negligently remediated the toxic mold contained in the Subject Property;

J.   Knew or should have known that the house contained dangerous levels of toxic mold and did nothing to remedy the toxic mold infestation;

K.   Failed to exercise reasonable care to repair dangerous defective conditions, which included the existence of mass amounts of toxic mold in the Subject Property, upon notice of their existence by Plaintiffs;

L.   Negligently failed to promulgate warnings to their tenants about the existence of toxic mold and/or the possibility of the development of toxic mold; and

M.   Failed to prevent any and all other acts of negligence which may be proven at trial by failing to fulfill its duties to Plaintiffs, thus causing damages which they have suffered.

29.

As a direct and proximate result of the negligence of Defendants, Plaintiffs sustained serious and painful personal injuries, extreme mental and physical pain and suffering, anxiety, anguish and upset, losses and damage to their quality of life, and mental and emotional well-being, property damage, and reasonable and necessary doctor, hospital, medical and related bills and expenses.

## COUNT II

## GROSS NEGLIGENCE

30.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 29.

31.

At all times mentioned herein, Defendants acted with gross negligence in total disregard of the duties owed to Plaintiffs to the degree that said gross negligence constitutes an intentional act.

32.

As a direct and proximate result of the gross negligence of Defendants, Plaintiffs have suffered injuries as described herein.

## COUNT III

## BREACH OF CONTRACT

33.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 32.

34.

Defendants breached the Military Lease Agreement entered into with Plaintiffs in October of 2014. The contract was breached for the following reasons:

A. Defendants violated the Implied Covenant of Good Faith and Fair Dealing when they failed to deal fairly and in good faith causing Plaintiffs to not benefit from the contract;

B. Defendants violated the Implied Warranty of Habitability, which is implied in all residential leases, when they leased to Plaintiffs a house that was not fit for human habitation;

C. The negligent management and maintenance of the property led to the moist environment, which is ideal for toxic mold growth;

D. Defendants failed to successfully complete the annual physical maintenance inspection of the property to ensure the house was up to housing maintenance quality standards by finding and repairing moist conditions that existed in the house;

E.     Defendants' employees or agents physically inspected the Subject Property after the complaints about toxic mold were made to Defendants and nothing was done to properly remedy the toxic mold infestation;

F.     Toxic mold spores were visible in plain sight so that Defendants' employees were able or should have been able to witness toxic mold growing in the houses and still did nothing to remedy the toxic mold infestation; and

G.     Defendants failed to honor the lease provision which allows for relocation of the tenant in the event the housing becomes uninhabitable. Further the lease provides that "Owner shall pay the cost of the relocation." Plaintiffs shouldered the entire cost of the relocation.

35.

As a direct and proximate result of Defendants breaching the contract with Plaintiffs and providing an unreasonably dangerous house, Plaintiffs sustained serious and painful, extreme mental and physical pain and suffering, anxiety, anguish and upset, losses and damage to their quality of life, and mental and emotional well-being, property damage, and reasonable and necessary doctor, hospital, medical and related bills and expenses.

## COUNT IV

## CIVIL CONSPIRACY

36.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 35.

37.

At all times mentioned herein, Defendants operated under an agreement between two or more persons or entities to accomplish the unlawful purpose of concealing dangerous conditions within the Subject Property. Additionally, each Defendant committed overt acts in furtherance of this conspiracy to conceal the dangerous condition causing damage to Plaintiffs.

## COUNT V

## ALTER EGO

38.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 37.

39.

At all times mentioned herein, Defendants, and each of them, inclusive of Unknown John and Jane Does A through M and Unknown Entities N through Z, were authorized and empowered by each other to act, and did so act, as agents of each other, and all of the things herein alleged to have been done by them were done in the capacity of such agency. Defendants disregarded corporate formalities and used the corporate form to commit the aforementioned malfeasance. Upon information and belief, all Defendants are responsible in some manner for the events described herein and liable to Plaintiffs for the damages they have incurred.

## COUNT VI

## FRAUDULENT CONCEALMENT

40.

Plaintiffs incorporate herein each and every allegation contained in Paragraphs 1 through 39.

41.

Defendants are guilty of fraudulent concealment which, in accordance with Miss. Code §15-1-67, results in Plaintiffs' cause of action accruing when "such fraud shall be, or with reasonable diligence might have been, first known or discovered." The fraudulent actions of Defendants are:

A.     Defendants took affirmative action designed or intended to prevent Plaintiffs from discovering the presence of toxic mold in their home, which affirmative action did in fact work to prevent them from discovering the toxic mold, until such time as action was taken by Plaintiffs to confirm the presence of the toxic mold;

B.     Defendants' maintenance technicians repeatedly reported that the toxic mold and leaks were located, repaired and removed when in fact they were not;

C.     Defendants did not disclose to Plaintiffs that they knew that toxic mold was a problem in the military housing they owned and managed;

D.     Defendants did not disclose to Plaintiffs that they knew that toxic mold had caused serious health problem to residents of military housing they owned and managed; and

E.     Defendants did not disclose to Plaintiffs that they knew the military housing they owned and managed suffered from serious construction defects that caused damp indoor spaces making the growth of toxic mold foreseeable.

## COUNT VII

## INTENTIONAL ENDANGERMENT

42.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 41.

43.

At all times mentioned herein, Defendants' actions were intentional and endangering to Plaintiffs. This included intentionally endangering Plaintiffs by allowing them to live in dangerous housing conditions, intentionally endangering Plaintiffs by allowing the dangerous conditions to persist, intentionally endangering Plaintiffs by failing to remedy the dangerous conditions, and intentionally endangering Plaintiffs by failing to relocate Plaintiffs after the dangerous conditions were discovered.

## DISCOVERY RULE

44.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 43.

45.

To the extent that Defendants allege that any of Plaintiffs' claims against them are barred by any statute of limitations, Plaintiffs plead the discovery rule. Plaintiffs suffered from a latent injury, undiscoverable by reasonable means. Plaintiffs neither knew nor should have known that they had been harmed, much less that their harm was caused by the wrongful conduct of Defendants until such time that was within the limitations period applicable to the claims they have asserted.

## CONTINUING TORT

46.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 45.

47.

To the extent that Defendants allege that any of Plaintiffs' claims against them are barred by any statute of limitations, Plaintiffs plead the continuing tort doctrine. Defendants inflicted

injury upon Plaintiffs over a period of time by engaging in continuous wrongful conduct which was repeated until Plaintiffs moved out of the Subject Property.

## DISABILITY OF INFANCY

48.

Plaintiffs incorporate herein the allegations contained in Paragraphs 1 through 47.

49.

Elisha and Adrienne are minors, tolling the applicable statute of limitations in accordance with the minors savings clause. See Miss. Code Ann. § 15-1-59.

## DAMAGES

50.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 49.

51.

As a direct and proximate result of Defendants' wrongful and negligent conduct, Plaintiffs sustained serious injuries, losses, and damages as follows:

A. Plaintiff, Aaron Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to his quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which he should be compensated for;

B. Plaintiff, Victoria Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to her quality of life, and mental and emotional well-being, reasonable and

necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for;

C. Plaintiff, Elisha Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to his quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for:

D. Plaintiff, Adrienne Eden, sustained serious and painful personal injuries, property damage, extreme mental and physical pain, suffering, anxiety, anguish and upset, losses and damage to her quality of life, and mental and emotional well-being, reasonable and necessary doctor, hospital, medical and related bills and expenses, all of which she should be compensated for; and

## PUNITIVE DAMAGES

### 52.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 51.

### 53.

At all times mentioned herein, Defendants acted with actual malice and/or gross negligence which evidenced a willful, wanton, or reckless disregard for others, or committed actual fraud, and such actions were so oppressive and overbearing that in order to punish the wrongdoer and deter similar misconduct in the future, Defendants should be subject to punitive damages consistent with the statutory scheme in the State of Mississippi. Specifically, after considering Defendants' financial condition and net worth, the nature and reprehensibility of Defendants' wrongdoing, Defendants' awareness of the amount of harm being caused, and

Defendants' motivation in causing such harm, the duration of Defendants' misconduct and attempts to conceal such misconduct, and Miss. Code Ann. § 11-1-65, Defendants should be subject to punitive damages in an amount to be proven at trial and decided by the jury.

## ATTORNEYS' FEES

54.

Plaintiffs incorporate herein each and every allegation made in Paragraphs 1 through 53.

55.

Defendants are liable for all reasonable attorneys' fees, costs, and expenses incurred in pursuit of this cause if found liable for punitive damages or fraud.

## PRAYER

WHEREFORE, Plaintiffs pray that after due proceedings are had that a Judgment be rendered in favor of Plaintiffs and against Defendants for damages in an amount to be proven at the trial of this cause, said damages including actual damages, compensatory damages and any other such damages to which Plaintiffs may be entitled and which may be proven at the trial of this cause, for a punitive damages amount based on Defendants' financial condition and net worth, for attorneys' fees, for post-judgment interest, or for such other amount consistent with the statutory scheme in Mississippi for the awarding of such damages, for all costs of this cause and for such other relief to which Plaintiffs may be entitled under the premises.

Respectfully submitted,

**AARON EDEN, VICTORIA EDEN, AND
ELISHA EDEN AND ADRIENNE EDEN,
MINORS, BY AND THROUGH THEIR
NATURAL GUARDIANS,
AARON AND VICTORIA EDEN**

BY:      _____

**WILLIAM LEE GUICE III
MS BAR # 5059
MARIA MARTINEZ
MS BAR # 9951
RUSHING & GUICE, P.L.L.C.
P. O. BOX 1925
BILOXI, MS 39533
TELEPHONE: (228) 374-2313
FAX: (228) 875-5987
ATTORNEYS FOR PLAINTIFFS**